**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| **MARTIN AND RHONDA CALLUM**, 4518 Weitzel Avenue Baltimore, MD 21214 Baltimore City<br><br>Plaintiffs,<br><br>v.<br><br>**PRIORITY FINANCIAL SERVICES, LLC,** Serve on: Ervin J. Kowitz, Resident Agent, 10999 Red Run Blvd, Suite 217 Owings Mills, MD 21117, Baltimore County<br><br>-and-<br><br>**ERVIN J. KOWITZ** 342 Chamborley Drive Reisterstown, MD 21136, Baltimore County<br><br>Defendants. | Civil Action No.: |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Martin and Rhonda Callum, on behalf of themselves and on behalf of the entire class of persons similarly situated, by and through their attorneys, Michael Paul Smith, Melissa L. English and Sarah A. Zadrozny of Smith, Gildea & Schmidt, LLC and Timothy F. Maloney, Veronica B. Nannis and Timothy L. Creed of Joseph, Greenwald and Laake, PA as co-counsel hereby file this Class Action Complaint and state as follows:

1

## INTRODUCTION

1.    Plaintiffs are borrowers who currently have or had a federally related mortgage loan, as defined by 12 U.S.C. § 2602, originated and/or brokered by Defendant Priority Financial Services, LLC, ("Priority Financial") which was or is secured by Plaintiffs' residential real property.  For the purposes of procuring title insurance and to facilitate the escrow and settlement process, Plaintiffs used Genuine Title, LLC as a result of Priority Financial's referral thereto.

2.    Plaintiffs and Class Members were victims of an illegal kickback scheme whereby Priority Financial's owner, branch managers, loan officers, agents and/or other employees, including Defendant Ervin J. Kowitz ("Kowitz"), directly or indirectly received unearned fees and kickbacks paid by Genuine Title, LLC, in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"). These kickbacks were paid pursuant to a quid pro quo agreement for kickbacks in exchange for the referrals of Priority Financial borrowers.  Neither Kowitz, Priority Financial nor any Priority Financial employee and/or agent receiving the kickbacks performed any title or settlement services associated with the kickbacks.

3.    These kickbacks were fraudulently concealed by Priority Financial, Kowitz and Genuine Title from Plaintiffs and Class Members and were omitted from Plaintiffs and Class Members' HUD-1s and other required loan documents in an effort to hide the kickbacks from Plaintiffs and Class Members.

## PARTIES

4.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 as a class action on their own behalf and on behalf of the entire class of people similarly situated.

5.      Plaintiffs Martin and Rhonda Callum are a married couple and residents of the city of Baltimore, Maryland.

6.      Priority Financial is a limited liability company licensed to conduct business throughout the State of Maryland, and maintains its principal place of business at 10999 Red Run Boulevard, Suite 217, in Owings Mills, Baltimore County, Maryland, 21117. During the relevant time frame, Priority Financial was a licensed mortgage lender in the State of Maryland, license number 17857.

7.      Defendant Ervin J. Kowitz is a resident of Baltimore County, Maryland. At all relevant times Kowitz was the CEO of, and employed by, Priority Financial.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over the parties and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

10. Congress enacted RESPA in 1974 as a response to the abuses in the real estate settlement process. Congress found that kickbacks and unearned fees in the settlement process resulted in unnecessarily high settlement charges.

11. 12 U.S.C. § 2607 states in relevant part:

> (a) Business Referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting charges. No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving federally related mortgage loan other than for services actually performed.

12. 12 U.S.C. § 2607(d)(2) states in relevant part:

Any person or persons who violate the prohibitions or limitations of [12 USC § 2607] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

13. The purpose of 12 U.S.C. § 2607 is to eliminate payment of unearned fees in connection with settlement services provided in federally related mortgage transactions, to protect consumers from unnecessarily high settlement charges caused by certain abusive practices, and to protect against other harms to consumers resulting from coordinated business relationships for settlement services. *See* 12 U.S.C. § 2601.

14. Genuine Title was at all times relevant hereto a title services company licensed under the laws of various states, including Maryland, and regulated by the Maryland Insurance Commissioner and had their principal place of business in the state of Maryland.

15. At all relevant times, Kowitz and Priority Financial's employees and/or agents were licensed mortgage brokers and/or authorized loan officers (collectively referred to herein as "Referring Brokers"), and at all relevant times were acting within scope of the business relationship and duties of their employment on behalf of Priority Financial, specifically seeking borrowers ("Priority Financial Borrowers") and securing loans for residential mortgages through Priority Financial and/or brokering such loans through Priority Financial to other lenders with whom Priority Financial authorized, referring Priority Financial Borrowers to title companies, and working with title companies to

close these loans.   All activities, including the Referring Brokers' interaction with Genuine Title, were for the benefit of Priority Financial.

**The Kickback Scheme**

16. Beginning in 2009, and continuing until or about early 2014, Genuine Title perpetrated the Kickback Scheme by adopting a business model and practice of paying kickbacks to mortgage lenders and brokers (including Priority Financial) for the referral of mortgage loans for settlement services.

17. Genuine Title paid kickbacks in three forms: 1) "Referring Cash", 2) "Free Marketing Materials" (including postage, leads and other data and information, and direct mail production), and 3) "Marketing Credits."

   **Referring Cash**

18. Genuine Title paid Referring Cash directly to lenders' branch managers, loan officers, employees and/or agents in exchange for referrals of loans for settlement services.

19. The Referring Cash kickbacks correlated to the volume of referrals to Genuine Title by the lenders' branch managers, loan officers, employees and/or agents.

20. Genuine Title calculated and paid Referring Cash kickbacks monthly and the kickbacks paid in a given period were equal to a per unit payment for each referred loan closed by Genuine Title in the previous period, often monthly.

21. Referring Cash kickbacks were paid and received solely pursuant to the referral agreement and in furtherance of the Kickback Scheme and were not related to any legitimate services rendered by either Genuine Title or the person receiving the kickback.

   **Free Marketing Materials**

22. Genuine Title also paid kickbacks in the form of Free Marketing Materials.

23. The Free Marketing Materials were paid by Genuine Title and/or by Competitive Advantage Media Group, LLC (hereinafter "CAM"), a company formed by Brandon Glickstein, Genuine Title's lead marketing and account representative. CAM was created "to provide marketing services to businesses." *See* relevant SDAT Records, attached hereto as **Exhibit 1.** The Resident Agent for CAM at the time of organization was Jonathan S. Bach, Esq., the in-house attorney for Genuine Title.  Additionally, the address for CAM was the same physical address of Genuine Title.  On or about May 13, 2013, CAM changed its Resident Agent and Resident Agent's address to Michael N. Mercurio at 8171 Maple Lawn Boulevard, Suite 200, Fulton, Maryland 20759. *See* **Exhibit 1.**

24. CAM was formed in part to facilitate Genuine Title's payment of kickbacks and unearned fees in exchange for referring borrowers to Genuine Title.

25. As part of and in furtherance of the Kickback Scheme, Genuine Title, either directly and/or through CAM, paid for marketing materials that were provided to mortgage company owners, branch managers, brokers, loan officers and/or other employees at lenders.

26. These Free Marketing Materials included  but were not limited to: the culling and selecting of the highest value leads to send mail that would most closely match the mortgage products and programs that the lender would be featuring, payment for sales leads, payment for inserting and folding of mail pieces and/or postage.  See B. Glickstein 9/15/16 Dep. at 16:7-18:18, attached hereto as **Exhibit 2**.

27. Genuine Title provided Free Marketing Materials under the referral agreement whereby the receiving branch manager, broker, loan officer and/or other employee agreed to refer

all loans generated by the Free Marketing Materials to Genuine Title for settlement services. See Exhibit 2, 43:4-13.

28. The Free Marketing Materials kickbacks were paid and received solely pursuant to the referral agreement and in furtherance of the Kickback Scheme and were not related to any services rendered by either Genuine Title or the person receiving the kickback.

**Marketing Credits**

29. Genuine Title also paid kickbacks in the form of Marketing Credits applied to invoices for marketing services lenders purchased from CAM and/or other vendors and/or leads companies.  While in operation, CAM provided marketing services/credits to primarily smaller and/or regional lenders.  These marketing services included designing, writing and printing marketing letters and other solicitation materials sent out on behalf of the lender, culling and selecting the highest value leads to send mail that would most closely match the mortgage products and programs that the lender would be featuring, and procurement of sales leads.

30. As part of and in furtherance of the kickback scheme, Genuine Title entered into a referral agreement whereby a lender, branch, or the loan officer (collectively, "Lender") would agree to refer loans to Genuine Title for settlement services and in return Genuine Title agreed to pay for marketing credits to be applied against that Lender's bill for services purchased from CAM.

31. The Marketing Credit kickbacks were calculated periodically, often monthly, and the Marketing Credit in a given period was determined on a per unit amount for each referred loan closed by Genuine Title in the previous period.

32. Genuine Title paid CAM the amount of the Marketing Credit and, in turn, CAM applied the Marketing Credit against the Lender's bill for CAM services.

33. This credit system was used by all parties to conceal, and did so conceal, the Kickback Scheme from borrowers, including Plaintiffs, Class Members, and regulators.

34. The Referring Cash, Free Marketing Materials, and Marketing Credits were provided as a quid pro quo, and pursuant to and with an understanding and agreement that the lenders' branch managers, loan officers, agents, owners and/or employees receiving the Referring Cash, Free Marketing Materials, and Marketing Credits would refer borrowers to Genuine Title for real estate title and settlement services, including performing a title search and procuring title insurance.

35. In some instances, when regulators began to investigate Genuine Title around October 2013, Genuine Title drafted sham and falsely backdated Title Services Agreements for some branch managers and loan officers with the intent to disguise and conceal the Kickbacks. However, the kickbacks were not provided in accordance with the fee schedule in the Title Services Agreements and the branch managers, loan officers, agents, owners and/or employees performed no services for Genuine Title.

36. Upon information and belief, the sham Title Services Agreements were used by both Genuine Title and the Lender's and Lender's agents to conceal, and did so conceal, the Kickback Scheme from borrowers and regulators.

37. Plaintiffs believe and therefore aver that the payment and receipt of Referring Cash, Free Marketing Materials, and/or Marketing Credits were not disclosed on borrowers' HUD-1s in order to conceal, and did in fact conceal, the Kickback Scheme from borrowers, including Plaintiffs and other class members, and regulators.

38. While Genuine Title would have preferred to compete by providing lower pricing of its title and settlement services to borrowers instead of paying kickbacks, the payment of kickbacks was the more effective way to increase Genuine Title's market share in the title and settlement services market, even though it was prohibited by law. *See* J. Zukerberg 5/20/16 Aff. ¶ 6, attached hereto as **Exhibit 3**.

39. Genuine Title has admitted that no title services were provided by any lender receiving kickbacks associated with the kickbacks, in whatever form those kickbacks were paid. *See id.*

40. As a result of the Kickback Scheme, Plaintiffs paid a portion of the cost of the Kickbacks out of the title and settlement costs charged and identified on their HUD-1s and would have paid less, but for the Kickback Scheme. *See id.*

**Priority Financial's Participation in the Kickback Scheme**

41. Genuine Title's records indicate that from 2009 through 2014 Priority Financial referred more than 500 loans to Genuine Title for settlement services.

42. Beginning in 2009, and upon information and belief, continuing until on or about early 2014 based upon Genuine Title and Priority Financial's continuing pattern of practice, Priority Financial's owner as well as licensed mortgage brokers employed by Priority Financial directly or indirectly received kickbacks in the form of Referring Cash and other things of value from Genuine Title and/or CAM in exchange for referrals of Priority Financial Borrowers to Genuine Title for settlement services ("Referral Agreement"), in violation of RESPA.

43. During the relevant time period, Referring Broker and Priority Financial CEO  Kowitz

in fact referred loans to Genuine Title under this Referral Agreement and received kickbacks in the form of Referring Cash for these referrals.

44. The Referring Cash kickbacks were paid by Genuine Title to Kowitz via B & E Management Company, LLC, ("B&E Management") a company created at least in part specifically to receive Referring Cash kickbacks.  *See* **Exhibit 4**, Articles of Organization for B & E Management, LLC; *see* **Exhibit 5**, Genuine Title checks to B & E Management Company, LLC.

45. This Referral Agreement with Genuine Title was in place the entire time Kowitz and Priority Financial was referring borrowers to Genuine Title.  *See id.*

46. During the relevant time period Referring Broker Matthew Herman was employed by Priority Financial.  Herman, in fact, referred Priority Financial borrowers to Genuine Title under the Referral Agreement, and Genuine Title paid and Herman received and accepted Referring Cash kickbacks in exchange for the referral of Priority Financial borrowers to Genuine Title. **Exhibit 6,** Genuine Title checks to Herman.

47. During the relevant time period Referring Broker Frederick Campbell was employed by Priority Financial.  Campbell, in fact, referred Priority Financial borrowers to Genuine Title under the Referral Agreement and Genuine Title paid and Campbell received and accepted Referring Cash kickbacks in exchange for the referral of Priority Financial borrowers to Genuine Title.  **Exhibit 7,** Genuine Title checks to Campbell.

48. Plaintiffs believe and therefore aver, and based upon a continuing pattern of practice, in addition to Kowitz, Herman, and Campbell, other currently known or unknown Referring Brokers employed by Priority Financial participated in the Kickback Scheme.

49. Plaintiffs additionally believe and therefore aver, based upon a continuing pattern of practice, that Genuine Title provided, and currently known and unknown Referring Brokers employed by Priority Financial received, other things of value in exchange for referring borrowers to Genuine Title.

50. Genuine Title has admitted that no title services were provided by Kowitz, Priority Financial and/or its Referring Brokers, agents, and/or employees associated with the receipt of the kickbacks.  *See* **Exhibit 3**, ¶ 6.

51. The payment by Genuine Title and acceptance by Priority Financial of the kickbacks were solely for the referral of borrowers to Genuine Title.

52. Plaintiffs were charged for settlement services related to their federally-related mortgage by Genuine Title while Kowitz, Priority Financial and Referring Brokers, agents, and/or employees were engaging in the Kickback Scheme.

53. As a result of the Kickback Scheme, Plaintiffs and class members were deprived of kickback-free settlement services and impartial and fair competition, as required by 12 U.S.C. § 2607, and as a result paid higher settlement charges.

54. Plaintiffs and class members paid more for their settlement services because Priority Financial's Referring Brokers performed no services in exchange for the kickbacks paid and kickbacks were paid instead of lower charges to the consumers.

55. **Exhibit 8** is a copy of a Sham Title Services Agreement between B&E Management and Genuine Title.   This Title Services Agreement is falsely backdated and neither B&E Management nor Genuine Title performed any services under this Sham Title Services Agreement.

56. Kowitz signed the Sham Title Services Agreement on behalf of and as sole member of B & E Management, and for the purpose of concealing, and did so conceal, from regulators and borrowers the illegal kickback scheme and the participation of Kowitz, Priority Financial and its brokers, employees and/or agents' participation in the illegal kickback scheme.

## FACTS FOR INDIVIDUAL CLASS REPRESENTATIVES

57. In or about November 15, 2012, Plaintiffs Martin and Rhonda Callum obtained a residential mortgage brokered through Priority Financial by Kowitz in relation to the refinancing of their residential real property at 4518 Weitzel Avenue, Baltimore, Maryland.

58. Kowitz referred Plaintiffs Martin and Rhonda Callum to Genuine Title for title and settlement services.  On the basis of this referral, Plaintiffs Martin and Rhonda Callum used Genuine Title for title and settlement services and settled on November 15, 2012. Plaintiffs Martin and Rhonda Callum paid Genuine Title for title and settlement services.

59. Kowitz referred Plaintiffs Martin and Rhonda Callum to Genuine Title for title and settlement services pursuant to the Referral Agreement with Genuine Title for Referring Cash as quid pro quo for referrals to Genuine Title and did so receive Referring Cash from Genuine Title.

60. Kowitz, Priority Financial and Genuine Title omitted the kickbacks from Plaintiffs' HUD-1 settlement statement and other required loan documents in an effort to conceal the kickbacks from Plaintiffs, and did so conceal the kickbacks from Plaintiffs.

61. Plaintiffs Martin and Rhonda Callum paid Genuine Title for those title and settlement services.  A portion of that payment was illegally split and shared with Priority Financial through the payment of the illegal kickbacks to Kowitz.

62. As a direct and proximate cause of the actions of Priority Financial and Kowitz, Plaintiffs Martin and Rhonda Callum and other Class Members were deprived of impartial and fair competition between settlement service providers in violation of RESPA and paid more for said settlement services.

## CLASS ACTION ALLEGATIONS

63. The allegations in the above stated paragraphs are incorporated by reference as if fully restated herein.

64. Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23, and the alleged class is defined as follows:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by, Priority Financial Services, LLC, for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of Priority Financial Services, LLC, Genuine Title LLC and/or Competitive Advantage Media Group LLC.

65. There are questions of law and fact common to the claims of each and all members of the Class.  These common questions include, but are not limited to:

a.    Whether Kowitz, Priority Financial and its employees and/or agents received unearned fees and illegal kickbacks from Genuine Title and/or CAM for the referral of business to Genuine Title;

13

b.     Whether payments to Kowitz, Priority Financial and its employees and/or agents violated RESPA;

c.     Whether Plaintiffs and Class Members were forced to pay more for said settlement services;

d.     Whether Priority Financial actively concealed the Kickback Scheme to avoid detection by Plaintiffs and Class Members;

e.     Whether Plaintiffs and the Class are entitled to treble damages under RESPA;

f.     Whether Plaintiffs and the Class are entitled to attorneys' fees and expenses under RESPA;

g.     Whether Priority Financial failed to disclose and concealed to Plaintiffs and Class Members that Genuine Title and/or CAM was participating with banks, referring branch managers, loan officers, employees and/or agents and failed to disclose and concealed, among other things, their affiliated business arrangements and/or relationships; and

h.     Whether despite exercising reasonable due diligence, Plaintiffs and Class Members did not and could not have learned of the illegal kickbacks until contacted by counsel.

66. These common issues of law and fact predominate over any question affecting only individual Class members.

67. Plaintiffs acted reasonably and diligently.  Plaintiffs did not and could not have known about the Kickback Scheme until contacted by undersigned counsel on or about June 27, 2016, due to Genuine Title and Priority Financial's efforts to conceal the kickbacks from Plaintiffs, Class Members, and regulators.

68. The Plaintiffs' transactions and the course of events thereafter exemplify the working of the Kickback Scheme, and are typical of the transactions involving all members of the proposed class.

69. The Plaintiffs' claims are typical of the claims or defenses of the respective Class members, and are subject to the same statutory measure of damages set forth in 12 U.S.C. § 2607(d)(2).

70. Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the named Plaintiffs and all other members of the Class are identical.

71. Plaintiffs' counsel has substantial experience in complex litigation and class action proceedings and will adequately represent the Class's interests.

72. The Class consists, upon information and belief, of over one hundred borrowers, and thus are so numerous that joinder of all members is impracticable.

73. Separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Priority Financial.

74. This action entails questions of law and fact common to Class Members that predominate over any questions affecting only individual Plaintiffs, and, therefore, a class action is superior to other available methods of fair and efficient adjudication of this litigation.

75. Most members of the Class are unaware of their rights to prosecute a claim against Defendants.

76. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but if he or she does, he or she may exclude himself or herself from the class upon the receipt of notice under Fed. R. Civ. P. 23(c).

**COUNT I**
**Violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §**
**2607(a) and (b)**

77. Plaintiffs incorporate the above stated paragraphs as if restated herein.

78. All transactions at issue in the instant complaint are incident to or part of real estate settlement services involving federally related mortgage loans and thereby are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

79. At all relevant times, Genuine Title was subject to the provisions of RESPA, 12 U.S.C. § 2601, *et. seq.*

80. As a lender and/or broker and/or servicer of federally related mortgage loans, Kowitz, Priority Financial and Priority Financial's Referring Brokers, are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

81. Genuine Title and/or CAM paid Kowitz, Priority Financial and Priority Financial's Referring Brokers kickbacks and/or things of value in exchange for referrals of business to Genuine Title in violation of RESPA, 12. U.S.C. § 2607(a) and (b).

82. Priority Financial by and through its brokers, loan officers, employees and/or agents and Kowitz, individually and/or by and through B&E Management Company, LLC, received things of value for referrals of business as part of real estate settlement services provided to Plaintiffs and Class Members, in violation of RESPA, 12 U.S.C. § 2607(a) and (b).

83. All loans referred to Genuine Title as part of the Kickback Scheme were secured by first or subordinate liens on residential real property and were made in whole or in part by Priority Financial and/or its affiliates whose deposits or accounts are insured by the Federal Government and/or who are regulated by an agency of the Federal Government.

84. The payment and/or arranging of payment of kickbacks to Priority Financial, it brokers, loan officers, employees and/or agents and Kowitz, by Genuine Title and/or CAM and the corresponding receipt thereof constitute a violation of § 8(a) of RESPA, which prohibits the payment of referral fees or kickbacks pursuant to an agreement in connection with the origination or brokering of federally related mortgage loans.

85. The kickbacks paid by Genuine Title and/or CAM to Kowitz, Priority Financial and Priority Financial's Referring Brokers, were also made solely for the purpose of Genuine Title receiving referrals and no services were actually performed by Priority Financial or its brokers, employees and/or or agents  in connection with the receipt of these payments and/or things of value, in violation of 12 U.S.C. § 2607(b), which prohibits the splitting of fees in connection with the origination of federal related mortgage loans.

86. Genuine Title and Priority Financial fraudulently, actively concealed the kickbacks paid to Referring Brokers from Plaintiffs and Class Members by refusing to list the kickbacks on Plaintiffs and Class Members' HUD-1 settlement statements and settlement documents, and failed and refused to disclose their affiliated business arrangement and by engaging in an elaborate payment scheme to conceal the illegal kickbacks.

87. Despite acting reasonably and exercising due diligence, Plaintiffs and Class Members did not and could not have known about the Kickback Scheme until contacted by undersigned counsel.

88. As a direct and proximate cause of Genuine Title's actions, Plaintiffs and Class Members used Genuine Title for title and settlement services, paid for said services and were deprived of impartial and fair competition and the costs paid by Plaintiffs and Class Members to Genuine Title for settlement services would have been lower.

WHEREFORE:

a.  Plaintiffs respectfully demand this Court to certify this class action pursuant to Federal Rule of Civil Procedure 23 and set this matter for trial; and

b.  Demand judgment for Plaintiffs and Class Members against Priority Financial and Kowitz and award Plaintiffs and Class Members an amount equal to:

1.  Treble damages for settlement services charged by Genuine Title, including, but not limited to, title insurance premiums, in an amount equal to three times the amount of any charge paid for such settlement services, pursuant to 12 U.S.C. § 2607(d)(2);

2.  Reasonable attorneys' fees, interest and costs pursuant to 12 U.S.C. § 2607(d)(5); and

3.  Such other and further relief as this Court deems proper.

Respectfully submitted,

_____/s/_____          _____/s/_____
Timothy F. Maloney, Esq. #03381          Michael Paul Smith, Esq. #23685
Veronica B. Nannis, Esq. #15679          Melissa L. English, Esq. #19864
Timothy L. Creed, Esq. #19364          Sarah A. Zadrozny, Esq. #13911
Joseph, Greenwald & Laake          Smith, Gildea & Schmidt, LLC
6404 Ivy Lane, Suite 400          600 Washington Avenue, Suite 200
Greenbelt, Maryland 20770          Towson, MD 21202
(301) 220-2200 / (301) 220-1214 (fax)          (410) 821-0070 / (410) 821-0071 (fax)
Email: tmaloney@jgllaw.com          Email: mpsmith@sgs-law.com
vnannis@jgllaw.com          menglish@sgs-law.com
tcreed@jgllaw.com          szadrozny@sgs-law.com
*Co-Counsel for Plaintiffs and Class Members*          *Counsel for Plaintiffs and Class Members*

## **PRAYER FOR JURY TRIAL**

Plaintiffs and Class Members hereby request a trial by jury on the foregoing Class Action

Complaint.

| | |
|---|---|
| _____/s/_____ | _____/s/_____ |
| Timothy F. Maloney, Esq. #03381 | Michael Paul Smith, Esq. #23685 |
| Veronica B. Nannis, Esq. #15679 | Melissa L. English, Esq. #19864 |
| Timothy L. Creed, Esq. #19364 | Sarah A. Zadrozny, Esq. #13911 |
| Joseph, Greenwald & Laake | Smith, Gildea & Schmidt, LLC |
| 6404 Ivy Lane, Suite 400 | 600 Washington Avenue, Suite 200 |
| Greenbelt, Maryland 20770 | Towson, MD 21202 |
| (301) 220-2200 / (301) 220-1214 (fax) | (410) 821-0070 / (410) 821-0071 (fax) |
| Email: tmaloney@jgllaw.com | Email: mpsmith@sgs-law.com |
| vnannis@jgllaw.com | menglish@sgs-law.com |
| tcreed@jgllaw.com | szadrozny@sgs-law.com |
| _Co-Counsel for Plaintiffs and Class Members_ | _Counsel for Plaintiffs and Class Members_ |